UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DANNY L. LOWE,

      Plaintiff,

v.                             Case No. 3:20-cv-237-MMH-PDB

JULIE JONES, and WEXFORD
HEALTH SOURCES, INC.,

      Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Danny L. Lowe, an inmate in the custody of the Florida
Department of Corrections (FDOC), initiated this action on March 9, 2020, by
filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[1] pursuant to 42
U.S.C. § 1983. Lowe is proceeding on a second amended complaint (SAC; Doc.
55),[2] filed with the assistance of counsel on December 28, 2021. In his SAC,
Lowe asserts claims against the following Defendants: (1) Julie Jones (Jones),
in her individual capacity, and (2) Wexford Health Sources, Inc. (Wexford).
Lowe, who alleges he suffers from the hepatitis C virus (HCV), contends that

_____

[1] For all pleadings and documents filed in this case, the Court cites to the
document and page numbers as assigned by the Court's Electronic Case Filing
System.

[2] Lowe attaches exhibits to his SAC. See Docs. 55-1 through 55-4.

Defendants violated the Eighth Amendment when they allegedly created and implemented a cost-savings policy that sanctioned the denial of medically necessary treatment for Lowe's HCV infection. As relief, Lowe seeks compensatory damages, attorney's fees and costs, and any other appropriate relief.

This matter is before the Court on Defendants' Motions to Dismiss. <u>See</u> Motion to Dismiss Second Amended Complaint (Jones Motion; Doc. 59); Defendant, Wexford Health Sources, Inc. Motion to Dismiss Second Amended Complaint (Wexford Motion; Doc. 60). Lowe filed responses in opposition to the Motions. <u>See</u> Plaintiff's Response in Opposition to Defendant Jones's Motion to Dismiss Second Amended Complaint (Response to Jones Motion; Doc. 61); Plaintiff's Response in Opposition to Defendant Wexford's Motion to Dismiss Second Amended Complaint (Response to Wexford Motion; Doc. 62).

Also before the Court is Wexford's Motion to Strike Lowe's Response (Wexford Motion to Strike; Doc. 63), in which Wexford asks the Court to strike the Response because Lowe did not file it within twenty-one days after service of Wexford's Motion as required by Middle District of Florida Local Rule 3.01(c). Wexford Motion to Strike at 2. Wexford contends that although the Court provided Lowe with forty-five days to respond to motions to dismiss in

its Order of Special Appointment; Directing Service of Process on Defendants; Notice to Plaintiff (Order; Doc. 25), the Order only applied to Lowe's Amended Complaint. Id. Wexford further argues it was not a party to the action when the Court entered the Order. Id. In his Response (Response to Wexford Motion; Doc. 64), Lowe contends that the Order applies to his SAC.

Wexford's contention on this issue is without merit. The Court's Order provided Lowe with forty-five days to respond to motions to dismiss filed in this case. Order at 3. The Order applies to the SAC and to Defendants' Motions to Dismiss Lowe's SAC. Wexford filed its Motion to Dismiss on February 18, 2022, and Lowe filed his Response to Wexford's Motion on March 31, 2022. Therefore, Lowe timely filed his Response, and Wexford's Motion to Strike is due to be denied. Defendants' Motions to Dismiss are ripe for review.

## II. Plaintiff's Allegations[3]

In his SAC, Lowe asserts Jones and Wexford violated his Eighth Amendment rights by denying him medically necessary treatment to cure his HCV infection. SAC at 1. Chronic, untreated HCV causes liver inflammation

---

[3] Because this case is before the Court on Defendants' Motions to Dismiss, the Court accepts the allegations in Lowe's SAC as true and construes them in the light most favorable to Lowe. Cinotto v. Delta Air Lines, Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).

and impairs liver function, which results in fibrosis, or scarring, of the liver. Id. at 4. Fibrosis of the liver may cause numerous complications, including jaundice, seizures, internal bleeding, and liver cancer. Id.

Lowe alleges that direct-acting antivirals (DAA) were approved for the treatment of HCV "beginning in late 2013." Id. at 5. The treatment of HCV with DAA became the standard of care in 2014. Id. And approximately 90% of HCV patients treated with DAA were cured of HCV. Id. DAA treatment also can alleviate liver inflammation, fibrosis, and complications related to fibrosis. Id.

Lowe had HCV when he entered the FDOC's custody in December 2015. Id. at 4. He did not begin receiving DAA treatment until February 26, 2018. Id. at 6. Before he began receiving DAA treatment, Lowe's METVAIR score[4] had advanced to F4. Id. Lowe contends his METVAIR score advanced to F4 because "Defendants deliberately refused to provide him with curative medi[c]ation." Id. According to Lowe, Jones established and enforced a policy of denying DAA treatments to inmates with HCV "until sometime in 2017." Id. at 5. Wexford, a medical contractor for the FDOC, also knew about and

---

[4] According to Lowe, a METVAIR score measures the extent of liver scarring in a patient. SAC at 6. METVAIR scores can range from F0, indicating no liver fibrosis, to F4, indicating cirrhosis of the liver. Id.

enforced the policy. <u>Id.</u> at 8. Lowe asserts Jones and Wexford maintained the policy despite their knowledge of the serious risk to inmates with HCV, including Lowe. <u>Id.</u> at 7-8. As a result of the policy, Lowe and other inmates "suffered damages, including permanent physical injuries, pain, suffering, disability, and aggravation of [] pre-existing condition[s]." <u>Id.</u> at 8-9.

Based on these allegations, Lowe asserts two claims in his SAC. In Count One, Lowe alleges Jones was deliberately indifferent to a serious medical need when she instituted and enforced a policy that delayed necessary treatment for Lowe's HCV infection in violation of the Eighth Amendment. <u>Id.</u> at 6-8. In Count Two, Lowe asserts Wexford was deliberately indifferent to a serious medical need when it enforced a policy that delayed necessary treatment for Lowe's HCV infection in violation of the Eighth Amendment. <u>Id.</u> at 8-9.

### III. Summary of the Arguments

In the Jones Motion, Jones contends that the Court should dismiss the claim against her for the following reasons: (1) Lowe failed to exhaust his administrative remedies; (2) Lowe fails to state a claim upon which relief can be granted; and (3) Jones is entitled to qualified immunity. <u>See generally</u> Jones Motion. In the Wexford Motion, Wexford asserts that the Court should dismiss the claim against it because: (1) Lowe failed to exhaust his administrative

remedies, and (2) Lowe fails to state a claim upon which relief can be granted. See generally Wexford Motion. Because failure to exhaust administrative remedies is a threshold issue,[5] the Court will first consider Jones's and Wexford's Motions as to this issue before turning to the question of whether he states viable claims.

## IV. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Lowe is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not

---

[5] See Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004) (considering failure to exhaust administrative remedies to be a threshold matter because a district court must dismiss a prisoner's suit if it finds he has failed to exhaust administrative remedies).

only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[6] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084

---

6 <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

7

(11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Lowe] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. <u>See</u> <u>Turner</u>, 541 F.3d at 1081. In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. <u>Id.</u> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082-83; <u>see also</u> <u>id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015). In evaluating whether Lowe has satisfied the exhaustion requirement, the

Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can

9

bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to

10

exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint;" is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to;" is "not written legibly and cannot be clearly understood;" is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable;" or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

## C. Analysis

### 1. Lowe's Exhaustion Efforts

In his SAC, Lowe provides records of his exhaustion efforts. Docs. 55-1 through 55-4. He alleges that he submitted a formal grievance on September 30, 2019, grieving "the fact that the medical department intentionally delayed treating [him] with DAA[]s to cure [his] Hep-C because of cost." SAC at 2; Doc. 55-1. Lowe further grieved that the delay resulted in "damage to [his] liver which takes away from [his] day to day living." Doc. 55-1. He claims Union

11

Correctional Institution (UCI) denied his grievance on October 9, 2019. SAC at

2; Doc. 55-2. The grievance response states in pertinent part:

> Inmate LOWE, reviewed records indicate that your last liver ultrasound noted a negative exam. The diagnostic that would show the damage, was completed in August, and the results have been explained to you.
>
> You are being treated in accordance with FDC policy and procedure.
>
> *******************
>
> Based on the above information, your grievance is denied.

Doc. 55-2. On October 24, 2019, Lowe appealed the denial of his grievance. SAC

at 2-3; Doc. 55-3. According to Lowe, the appeal was returned without action

on November 19, 2019. SAC at 3; Doc. 55-4. The response to his appeal states

in pertinent part:

> Appeal Returned without Action:
>
> Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure. You are grieving a delay in treatment for your Hepatitis C that was completed in May 2019. (when your formal grievance was received on 9/30/19)
>
> Please be advised that you are outside the timeframe to grieve this issue and the Institution should have returned your formal grievance.

12

> Formal grievances must be received no later than 15 calendar days from: 1. The date on which the informal grievance was responded to; or 2. The date on which the incident or action being grieved occurred.
>
> Just because the Institution failed to return your formal grievance does not negate our office from returning your appeal.
>
> Therefore, your appeal is being returned without action.

Doc. 55-4.

According to Lowe, he attempted to exhaust administrative remedies. SAC at 2. Nevertheless, he argues that he did not need to exhaust administrative remedies because "[t]he nature of the deprivation here – refusal to provide an available and timely cure to HCV – is such that no administrative remedy was available." Id.

In the Jones Motion, Jones argues Lowe did not properly exhaust available administrative remedies because he failed to file a timely grievance. Jones Motion at 8. According to Jones, Lowe's September 30, 2019 formal grievance was untimely because he did not file it within fifteen calendar days from February 26, 2018, when Lowe began receiving DAA treatment. Id. Jones contends the appeal was returned on timeliness grounds, id., and therefore, the Office of the FDOC Secretary did not waive the procedural defect, id. at 9.

Wexford raises similar arguments in the Wexford Motion. Wexford Motion at 12-13. Additionally, Wexford argues Lowe also failed to identify Wexford  in his formal grievance as "the party responsible for delaying his DAA treatment." Id.

## 2. <u>Turner</u> Step One

Under the first step of the <u>Turner</u> analysis, the Court must review the allegations in the Motions and the SAC and accept as true Lowe's allegations. <u>See</u> <u>Whatley</u>, 802 F.3d at 1209 (quoting <u>Turner</u>, 541 F.3d at 1082). If Lowe's allegations in the SAC show a failure to exhaust, then dismissal would be appropriate. <u>See</u> <u>id.</u>

The Court now turns to the allegations in the SAC and the Motions concerning Lowe's exhaustion efforts. The parties agree that Lowe filed a formal grievance, and UCI denied his grievance. SAC at 2; Jones Motion at 8; Wexford Motion at 13. Lowe subsequently filed an appeal that the Office of the FDOC Secretary returned without action because it considered the grievance to be untimely. SAC at 3; Jones Motion at 8-9; Wexford Motion at 13. However, Lowe asserts he did not have available administrative remedies because of the nature of his injury, and his "attempts to exhaust administrative remedies were futile because no administrative remedy was or could be made available

14

that would turn back time and provide him with timely DAA treatment." SAC at 3. Accepting Lowe's view of the facts as true, the Court cannot dismiss the SAC at the first step of the <u>Turner</u> analysis.

### 3. <u>Turner</u> Step Two

As dismissal would not be appropriate based on the allegations in the SAC and the Motions, the Court turns next to the second prong of the <u>Turner</u> test. Lowe argues that he did not need to exhaust administrative remedies because he had no available administrative remedies. SAC at 2-3; Response to Jones Motion at 4; Response to Wexford Motion at 4. Lowe grieves the undue delay of his DAA treatment, and he requests compensation for damages. SAC at 2; Response to Jones Motion at 4; Response to Wexford Motion at 4. Lowe contends "[n]o administrative remedy can turn back the clock and undo the damage that was done to [his] body." Response to Jones Motion at 5; Response to Wexford Motion at 4.

In <u>Alexander v. Hawk</u>, 159 F.3d 1321 (11th Cir. 1998), the Eleventh Circuit Court of Appeals interpreted the term "available" as used in the PLRA to resolve a prisoner's claim that he had no available administrative remedies where he sought money damages and for the Ensign Amendment[7] to be

---

[7] Pub. L. No. 104-208, § 614, 110 Stat. 3009 (Sept. 30, 1996).

declared unconstitutional. The court noted pre-PLRA section 1997e(a) "granted district courts discretion whether to require a prisoner to exhaust administrative remedies." Id. at 1323. Moreover, pre-PLRA section 1997e(a) only required "'exhaustion of such plain, speedy, and effective administrative remedies as available.'" Id. at 1326 (quoting 42 U.S.C. § 1997e(a)(1) (1994)) (emphasis added). In 1996, Congress enacted the mandatory exhaustion requirement "to curtail frivolous and abusive prisoner litigation," and removed the terms "plain, speedy, and effective" from the PLRA's text. Id. at 1324. In turn, the Hawk court concluded Congress "no longer wanted courts to examine the effectiveness of administrative remedies but rather to focus solely on whether an administrative remedy program is 'available' in the prison involved." Id. at 1326. The court ultimately found:

> [T]he term "available" in section 1997c(a) is used to acknowledge that not all prisons actually have administrative remedy programs. Some state penal institutions may not have an administrative remedy program to address prison conditions, and thus there are no "available" administrative remedies to exhaust.

Id. 1326-27.

While the PLRA presupposes "the administrative process has authority to take some action in response to a complaint," it does not distinguish based on the particular form of relief sought and offered. Booth v. Churner, 532 U.S.

16

731, 736, 741 (2001). Moreover, "the PLRA's test suggests no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639.

The Supreme Court has identified three circumstances in which administrative remedies are considered unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. Third, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Upon review of the record, the Court concludes that Lowe had available administrative remedies that he failed to properly exhaust. To the extent Lowe argues that the Court should find that administrative remedies were unavailable to him because he brings a particular claim or seeks a particular form of relief, Lowe's argument is unconvincing. Lowe asks that the Court

engage in an analysis similar to the futility and adequacy evaluations that have been rejected by the Eleventh Circuit Court of Appeals based on Supreme Court precedent.[8] Moreover, both the Supreme Court and the Eleventh Circuit have consistently rejected requests to carve out exceptions to the PLRA's exhaustion requirement for certain claims and forms of relief. See Porter v. Nussle, 534 U.S. 516, 532 (2002) (holding the PLRA's exhaustion "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth, 532 U.S. at 741 (holding a prisoner seeking only money damages was required to exhaust administrative remedies even though he could not receive monetary relief from the prison grievance process); Varner v. Shepard, 11 F.4th 1252, 1264 (11th Cir. 2021) (declining to carve out an exception to the exhaustion requirement based on plaintiff's unique circumstances). Simply because the FDOC could not provide Lowe with monetary damages or reverse the damage to his liver does not mean that Lowe

---

[8] "[Plaintiff's] proffered construction of "remedies as available" would require courts to evaluate each cause of action and each type of relief sought in each prisoner's complaint and determine whether the [Federal Bureau of Prisons] can grant any adequate relief. This is not what the PLRA provides or what Congress intended[]." Alexander, 159 F.3d at 1326; see also Booth, 532 U.S. at 741 n.6 ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

18

had no available administrative remedies. See Booth, 532 U.S. at 741 ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.[]") (footnote omitted).

Here, the record reflects the FDOC has an established procedure for resolving inmate grievances. Jones Motion at 7; Wexford Motion at 12; Fla. Admin. Code R. 33-103.001 through 33-103.018. The FDOC also offers a distinct procedure for medical grievances, whereby the inmate can first file a formal grievance instead of an informal grievance. Fla. Admin. Code R. 33-103.005(1); 33-103.006(3)(e). The grievance records attached to Lowe's SAC demonstrate he ultimately availed himself of these administrative remedies. Docs. 55-1 through 55-4. Moreover, the FDOC had the authority to take some action in response to Lowe's claim[9] because, as noted in the UCI's initial response to his grievance, Lowe already had a liver ultrasound and a "diagnostic that would show damage." Doc. 55-2. Accordingly, the Court finds Lowe had available administrative remedies and used them.

In the alternative, Lowe contends that his grievance was timely filed. Response to Jones Motion at 5; Response to Wexford Motion at 4. According to Lowe, "[a] refusal to provide a medical cure to a chronic infection is not a single

---

[9] See Booth, 532 U.S. at 736.

19

event that triggers a 15-day period within which [he] had to file a grievance."

Response to Jones Motion at 5; Response to Wexford Motion at 4.

To properly exhaust administrative remedies, "prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." <u>Jones</u>, 549 U.S. at 218 (internal citation and quotation omitted). The prison's requirements define the boundaries of proper exhaustion. <u>Id.</u> at 923. "'Courts must give deference to prison officials regarding the interpretation and application of their own grievance procedures so long as the procedures provide inmates with a meaningful opportunity to present grievances,' and provided that the application of the grievance rules was not 'clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts.'" <u>Stephens v. Corizon, LLC</u>, No. 3:20-cv-70-BJD-PDB, 2021 WL 2981317, at *8 (M.D. Fla. July 14, 2021) (quoting <u>Jones v. Frank</u>, No. 07-cv-141-BBC, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008)); <u>see also</u> <u>White v. Moore</u>, 789 So. 2d 1118, 1120 (Fla. 1st DCA) (2001) (noting that courts defer to an agency's interpretation of a rule that it administers).

The Court finds that the FDOC's interpretation of its rule was not clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right

of access to the courts. Lowe grieved a delay in DAA treatment. Doc. 55-1. UCI

determined that Lowe filed an untimely grievance on September 30, 2019,

when his DAA treatment ended in May 2019. Doc. 55-4. Accordingly, the Court

cannot find that the FDOC arbitrarily interpreted its rules by counting fifteen

days from the end of the course of treatment that the FDOC had allegedly

delayed providing to him.[10]

Wexford raises the additional argument in its Motion to Dismiss that

Lowe failed to properly exhaust administrative remedies because he did not

identity Wexford in his formal grievance "as the party responsible for delaying

his DAA treatment." Wexford Motion at 13. However, the Court need not

address this argument because the Court has determined, regardless of any

---

[10] In support of his argument, Lowe also cites to Kinard v. Centurion of Fla., LLC, No. 3:19-cv-490-J-34JRK, 2020 WL 3542650, at *1 (M.D. Fla. June 30, 2020); however, the facts in Kinard are distinguishable from the facts in this case. In Kinard, the plaintiff filed his grievance during the period in which the FDOC denied him DAA treatment. Id. at *9. At that time, "[p]rison officials were still capable of resolving the ongoing deprivation of Kinard's medical care." Id. Moreover, the FDOC did not find the grievance to be untimely filed on appeal. Id. Here, Lowe did not file his grievance until more than a year after he began receiving DAA treatment and months after his DAA treatment ended. SAC at 4; Docs. 55-1 through 55-2. While UCI rejected Lowe's grievance on the merits, the Office of the FDOC Secretary found Lowe's grievance to be untimely. Docs. 55-2; 55-4. Therefore, the FDOC did not waive the procedural defect in Lowe's case. See Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) ("[W]e hold that a prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits at the last available stage of administrative review.").

21

attempt to identify a defendant, Lowe failed to properly exhaust available administrative remedies, and his SAC is due to be dismissed.[11]

Jones and Wexford ask the Court to dismiss Lowe's SAC with prejudice because he cannot now timely file a grievance. Jones Motion at 10; Wexford Motion at 13. However, Lowe may still file for an extension of time, see Fla. Admin. Code R. 33-103.011(2), or the FDOC could waive compliance with its procedures. Therefore, Lowe's SAC will be dismissed without prejudice.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1. Defendant Wexford Health's Motion to Strike (Doc. 63) is **DENIED**.

2. Defendants Jones and Wexford Health's Motions to Dismiss (Docs. 59, 60) are **GRANTED** to the extent Defendants seek dismissal for Lowe's failure to exhaust his administrative remedies.

3. Plaintiff Danny L. Lowe's Second Amended Complaint (Doc. 55) is **DISMISSED WITHOUT PREJUDICE**.

---

[11] The Court also need not address Jones's qualified immunity claim or Jones's and Wexford's assertions that Lowe failed to state a claim for relief.

4.     The Clerk shall enter judgment dismissing this case without prejudice, terminating any pending motions, and closing the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of June, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9
C:     Counsel of record

23